UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. **12-80199-CR-HURLEY/HOPKINS**

18 U.S.C. § 1349

UNITED STATES OF AMERICA,

        Plaintiff,

v.

JOHN FENIMORE,
    a/k/a "John Reynolds,"
MICHAEL T. DIGNELLI,
    a/k/a "Mark Roberto,"
    a/k/a "George Leon,"
GARRY A. BROWN,
    a/k/a "Dick Oldman," and
JOHN F. MACPHERSON,

        Defendants.
_____/

## INDICTMENT

THE GRAND JURY CHARGES THAT:

### COUNT 1
(Conspiracy to Commit Mail and Wire Fraud: 18 U.S.C. § 1349)

1. From on or about December 17, 2008, through on or about March 30, 2010, the exact dates being unknown to the Grand Jury, at Boca Raton, in Palm Beach County, in the Southern District of Florida, and elsewhere, the defendants,

JOHN FENIMORE,
    a/k/a "John Reynolds,"
MICHAEL T. DIGNELLI,
    a/k/a "Mark Roberto,"
    a/k/a "George Leon,"

**GARRY A. BROWN,**
a/k/a "Dick Oldman," and
**JOHN F. MACPHERSON,**

did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly combine, conspire, confederate and agree with each other and with persons known and unknown to the Grand Jury to commit certain offenses against the United States, that is:

    a. to knowingly, and with intent to defraud, devise, and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that they were false and fraudulent when made, and knowingly causing to be delivered certain mail matter by the U.S. Postal Service and by private and commercial interstate carrier, according to the directions thereon, for the purpose of executing the scheme, in violation of Title 18, United States Code, Section 1341; and

    b. to knowingly, and with intent to defraud, devise, and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that they were false and fraudulent when made, and knowingly transmitting and causing to be transmitted certain wire communications in interstate and foreign commence, for the purpose of executing the scheme, in violation of Title 18, United States Code, Section 1343.

## **PURPOSE AND OBJECT OF THE CONSPIRACY**

2. It was the purpose and object of the conspiracy for the defendants and their co-conspirators to unlawfully enrich themselves and others by seeking to obtain millions of dollars in advanced fees from timeshare owners across the United States in connection with the purported purchase of their timeshares by the conspirators, which purchases never occurred and were never

intended to occur.

## MANNER AND MEANS OF EXECUTING THE SCHEME

The manner and means by which the defendants and their co-conspirators sought to accomplish the object of the conspiracy included, among others, the following:

3. Between December 17, 2008, and March 30, 2010, co-conspirators T.M.O. and FRANK DEFILIPPO organized a boiler room which solicited advanced fees from timeshare owners in connection with the purported purchase of their timeshares. T.M.O. would frequently change the corporate name under which the boiler room operated in order to avoid law enforcement scrutiny and to hamper consumer complaints. Although operating under different corporate names, the boiler room was at all times under the control of T.M.O. and DEFILIPPO and operated by them out of a single office which was initially located in Boynton Beach, Florida, and then Boca Raton, Florida. Several of the conspirators, including defendant **JOHN F. MACPHERSON,** were officers of the various corporations used by the boiler room.

4. From the beginning of the conspiracy, T.M.O., DEFILIPPO and defendant **JOHN FENIMORE** caused the hiring of telemarketers, including defendants **MICHAEL T. DIGNELLI, GARRY A. BROWN,** and **JOHN F. MACPHERSON,** to function as "openers" or "fronters" for the scheme. On occasion, defendant **JOHN FENIMORE** also acted as an "opener." Using lead sheets which identified timeshare owners and their properties, the openers or fronters would make an initial telephone call to a timeshare owner in order to entice him to sell his timeshare to the company. Co-conspirators directed the openers to solicit only timeshare owners who resided out of state to minimize in-person complaints. The openers were directed to represent that the company intended to purchase the timeshare and had the financial ability to make the purchase. Once the

timeshare owner's interest was peaked, the openers would refer the call to a "closer."

5. T.M.O., DEFILIPPO, and defendant **JOHN FENIMORE** caused the hiring of telemarketers, including defendants **MICHAEL T. DIGNELLI** and **GARRY A. BROWN**, to function as closers. Defendant **JOHN FENIMORE** also functioned as a closer. Closers were more highly skilled telemarketers, who were responsible for closing the deal with the timeshare owner. The closers negotiated the purported purchase price of the timeshares and informed the owners that they would have to pay advanced fees in connection with the sale. The closers falsely represented that the advanced fees were to be used to cover the cost of title searches and other sale related expenses.

6. Initially, the closers represented that actual title companies were conducting the title searches, when in fact they were not. When a title company learned that its name was being used by the closers, co-conspirators incorporated Royal Title Services and falsely claimed that Royal Title Services was now conducting title searches for the company. In truth, Royal Title Services was a dummy company which conducted no real business.

7. The closers promised the timeshare owners that the advanced fees would be held in escrow for approximately thirty days and refunded to them at the closing. In truth, T.M.O., and other co-conspirators never established any escrow accounts, never verified any timeshare titles, and never returned any of the advanced fees to timeshare owners.

8. The closers would also routinely use fictitious names. To lend an air of legitimacy to their pitches, defendants **JOHN FENIMORE** and **GARRY A. BROWN**, as well as other co-conspirators, would falsely identify themselves as the "Director of Sales." Closers also re-contacted victims and offered to purchase unused banked weeks, that is, weeks owed to the timeshare owner

by the timeshare. This purported purchase also required an additional advanced fee. Although T.M.O. and other co-conspirators collected advanced fees in connection with the purported purchase of banked weeks, they never actually purchased any banked weeks and failed to return any of the advanced fees.

9. After the company changed names, victim timeshare owners were occasionally re-contacted by certain closers. Using the new company name, the closers falsely claimed that the new company had taken over the old one and for an additional advanced fee the new company would go forward with the purchase. As an inducement, victims were falsely told that they would be credited with the previous fees they had paid at the time of the new closing. No such closings ever occurred.

10. To further the scheme, members of the conspiracy completed contracts specifying the purchase price, time of closing and required fees to be paid by the victim. Generally, the co-conspirators would send the contracts by United States mail to the victims, with directions to return the signed contracts along with their checks for the advanced fees to the company. On some occasions, the contracts were sent to the victims by e-mail or facsimile. The victims were directed to send the advanced fees to a mailbox drop located in Boca Raton, Florida, rented by the conspirators. Upon receipt, the co-conspirators deposited the victims' checks into the corporate accounts.

11. A co-conspirator operated as the office manager at the boiler room, serving as an intermediary between the telemarketers and those who set up the scheme. Co-conspirator T.M.O., who maintained the records of the transactions, was responsible for reviewing the sales and ultimately calculating the monies due to each of the telemarketers. T.M.O., a signatory on each of the company bank accounts, issued checks to the telemarketers as payment for their split.

Approximately 50% of the fees were paid to the telemarketers; the remainder was split between T.M.O. and FRANK DEFILIPPO. Defendant **FENIMORE** received over $300,000 as his split of the fraud proceeds. Defendant **DIGNELLI** received over $26,000 as his split of the fraud proceeds. Defendant **BROWN** received over $32,000 as his split of the fraud proceeds. Defendant **MACPHERSON** received over $7,000 as his split of the fraud proceeds.

12. During the course of the conspiracy, the defendants and their co-conspirators defrauded more than 1,000 victims, most of whom were senior citizens, located throughout the United States.

All in violation of Title 18, United States Code, Section 1349.

A TRUE BILL

_____
FOREPERSON

_____
WIFREDO A. FERRER
UNITED STATES ATTORNEY

_____
KERRY S. BARON
ASSISTANT UNITED STATES ATTORNEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

vs.

JOHN FENIMORE,
a/k/a "John Reynolds," et al.,
_____/

CASE NO. _____

## CERTIFICATE OF TRIAL ATTORNEY*

Defendant.
Superseding Case Information:

**Court Division:** (Select One)

___ Miami  ___ Key West
___ FTL   _X_ WPB  ___ FTP

New Defendant(s)         Yes ___   No ___
Number of New Defendants  ___
Total number of counts    ___

I do hereby certify that:

1. I have carefully considered the allegations of the information, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter: (Yes or No)  _NO_
   List language and/or dialect _____

4. This case will take  _3-4_ days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)                    (Check only one)
   I    0 to 5 days     _X_            Petty     ___
   II   6 to 10 days    ___            Minor     ___
   III  11 to 20 days   ___            Misdem.   ___
   IV   21 to 60 days   ___            Felony    _X_
   V    61 days and over ___

6. Has this case been previously filed in this District Court? (Yes or No)  _NO_
   If yes:
   Judge: _____   Case No. _____
   (Attach copy of dispositive order)
   Has a complaint been filed in this matter?  (Yes or No)  _YES_
   If yes:
   Magistrate Case No.            12-MJ-08305-WM
   Related Miscellaneous numbers: _____
   Defendant(s) in federal custody as of   _Garry A. Brown on 09-24-2012_
   Defendant(s) in state custody as of   _____
   Rule 20 from the _____   District of _____

   Is this a potential death penalty case? (Yes or No)  _NO_

7. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003?   ___ Yes  _X_ No

8. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to September 1, 2007?   ___ Yes  _X_ No

/s/ Kerry Baron
KERRY BARON
ASSISTANT UNITED STATES ATTORNEY
Administration No. A5500040

*Penalty Sheet(s) attached

REV 4/8/08

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

Defendant's Name: **JOHN FENIMORE, a/k/a "John Reynolds"**

Case No.: _____

Count #: 1

Conspiracy to commit mail and wire fraud.

18 U.S.C. § 1349

* **Max.Penalty**: 20 years imprisonment; 3 years supervised release; $250,000 fine, and restitution.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

Defendant's Name: __MICHAEL T. DIGNELLI, a/k/a "Mark Roberto,"___
___and a/k/a "George Leon"___

Case No.:_____

Count #: 1

_Conspiracy to commit mail and wire fraud._

_18 U.S.C. § 1349_

* Max.Penalty:   20 years imprisonment; 3 years supervised release; $250,000 fine, and restitution.

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name:** __GARRY BROWN, a/k/a "Dick Oldman"__

**Case No.:** _____

**Count #: 1**

Conspiracy to commit mail and wire fraud.

18 U.S.C. § 1349

**\* Max.Penalty:** 20 years imprisonment; 3 years supervised release; $250,000 fine, and restitution.

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name:** __JOHN F. MACPHERSON__

**Case No.:** _____

**Count #: 1**

_Conspiracy to commit mail and wire fraud._

_18 U.S.C. § 1349_

**\* Max.Penalty**: 20 years imprisonment; 3 years supervised release; $250,000 fine, and restitution.